UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF IDAHO

| | |
|---|---|
| CARLOS ESQUIVEL,<br><br>         Petitioner,<br><br>  v.<br><br>JOHANNA SMITH,<br><br>         Respondent. | Case No. 1:11-cv-00030-BLW<br><br>**MEMORANDUM DECISION AND ORDER** |

Pending before the Court is Petitioner Carlos Esquivel's Amended Petition for Writ of Habeas Corpus. (Dkt. 21.) Respondent has filed an Answer and Brief in Support of Dismissal (Dkt. 32), Petitioner has filed a Reply (Dkt. 35), and Respondent has submitted a Sur-Reply. (Dkt. 36.) Having reviewed the record, including the state court record, the Court concludes that oral argument is unnecessary. Accordingly, the Court enters the following Order.

## BACKGROUND

After a jury trial in state district court at which Petitioner testified, he was convicted of three counts of lewd conduct with a minor and one count of sexual abuse of

a minor. (State's Lodging A-1, pp. 82-84.) Petitioner was represented by Attorney Eric

Rolfson at trial. Before sentencing, Petitioner was ordered to undergo a psychosexual

evaluation (PSE), without objection by Petitioner's counsel. (*Id*., pp. 72-73.) Petitioner's

counsel did not advise him that he had the right to decline the PSE.

During the PSE, Petitioner refused to answer a set of 300 questions that were

intended to help the evaluator determine Petitioner's propensity to commit future sexual

wrongs and to be rehabilitated.[1] At sentencing, Petitioner's counsel described the

circumstance as follows:

> As far as the psychosexual evaluation, I was curious why Carlos
> didn't complete all of the questions and he said, well, Dr. Engle came in to
> talk to him and the other evaluator and he says it was a relatively short
> period of time that he spent with him. He said he didn't really spend any
> more than ten or 15 minutes with Dr. Engle and he says one of the things
> that he was told early on was if you are not comfort [sic] with certain
> questions, you don't necessarily have to answer them. He told me he was
> extremely uncomfortable with some of the questions, questions about
> necrophilia and there were questions that a number – there was no way he
> was going to put it as perversions, he found that completely disturbing. And
> when he was told that if you are not comfortable with something, you don't
> necessarily have to answer it, he took that very literally. And I think it's
> somewhat of a telling point in his favor that he – that he saw these things as
> disturbing and told he didn't have to answer them, and he didn't want to
> answer them.

(State's Lodging A-3, p. 260-61.)

Despite the incomplete psychosexual evaluation, Dr. Engle made some

conclusions and recommendations, including that Petitioner had a moderate risk of re-

---

[1] Petitioner has not pointed to any particular statement of uncharged criminal conduct he made
during the PSE that might have subjected him to future criminal prosecution.

**MEMORANDUM DECISION AND ORDER - 2**

offending. At sentencing, the district court stated: "True it is that – it's not to be unexpected that an individual will get an evaluation of a moderate level of risk because of denial [that the crime occurred], but the fact of the matter is that the Court cannot ignore the fact that he was evaluated as having a moderate level of risk." (State's Lodging A-3, p. 270.) The state district court also noted that when Petitioner made "comments to the evaluator he made it clear that he was not interested in having any sort of treatment." (*Id*.)

The sentencing court also considered the presentence investigation report, the comments made by various people who wrote letters to the court, Petitioner's "nominal [criminal] history," and the fact that Petitioner continued to deny that the sexual acts occurred. (*Id*., p. 265.) The court indicated: "In particular I've also relied very heavily on what happened in the trial itself, my own recollection of it, my own assessment of the credibility of the witnesses in arriving at this decision." (*Id*.) The sentencing court also noted that the child victim was very credible in both an interview with a health care work (CARES) and at trial. (*Id*., p. 266.)

For each lewd conduct conviction, Petitioner was sentenced to 30 years in prison with 15 years fixed; for the sexual abuse conviction, he was sentenced to 15 years in prison with 5 years fixed. (*Id*., p. 271.) Petitioner is serving his sentences concurrently. (*Id*.)

On direct appeal, Petitioner brought two claims: (1) that his motion for acquittal based on insufficient evidence for a conviction should have been granted; and (2) that his sentence was excessive. (State's Lodging B-1.) Petitioner's convictions and sentences

**MEMORANDUM DECISION AND ORDER - 3**

were affirmed by the Idaho Court of Appeals, and the Idaho Supreme Court denied the petition for review. (State's Lodgings B-3, B-6.)

Petitioner next filed a pro se post-conviction petition, alleging numerous ineffective assistance of counsel claims (State's Lodging C-1, p. 4), which he later amended to include the failure to request an independent expert and independent PSE. (*Id.*, p. 73.)

In the post-conviction action, Petitioner requested appointment of counsel, but the state district court denied the request because it found Petitioner's post-conviction claims frivolous on their face. (*Id.*, pp. 41-44; 84-89.) The district court then dismissed the petition for failure to state a claim upon which relief could be granted. (*Id.*, pp. 108-117; 132-142.)

On appeal, the Idaho Court of Appeals affirmed in part and reversed in part, remanding for appointment of counsel to pursue "the claim that . . . counsel was ineffective in failing to arrange an independent PSE or otherwise mitigate the effects of the court-ordered evaluation." (State's Lodging D-4. p. 7.) On remand, the district court appointed Layne Davis as counsel for Petitioner, who filed a second amended petition for post-conviction relief alleging only an ineffective assistance claim that "trial counsel's failure to properly advise him regarding his Fifth Amendment Rights in submitting to a psychosexual evaluation amounted to deficient performance." (State's Lodging E-1, p. 26.)

In support of the amended post-conviction petition, Petitioner submitted an

**MEMORANDUM DECISION AND ORDER - 4**

affidavit from trial counsel stating: "I did not tell my client that he had a fifth amendment right not to participate in that psychosexual evaluation." (State's Lodging E-1, pp. 44-55.) This claim is based upon *Estrada v. State*, 149 P.3d 833 (Idaho 2006). In *Estrada*, the Idaho Supreme Court held that a psychosexual evaluation is a critical stage of a criminal prosecution such that the defendant has (1) a Sixth Amendment right to the advice of counsel about whether to undergo an evaluation and (2) a Fifth Amendment right to refuse to participate in the evaluation. *Id*. at 838–39.

On post-conviction review, the state district court concluded that trial counsel's performance was deficient for failing to advise Petitioner about his Fifth Amendment rights regarding the evaluation, but the court denied relief on the ineffective assistance of counsel claim because Petitioner had failed to show prejudice. (State's Lodging E-1, p. 81-93.)

On appeal, Petitioner contested the state district court's decision under both the Sixth Amendment and the Fifth Amendment. (State's Lodging F-1.) The Idaho Court of Appeals affirmed the state district court's decision, determining that, based on the appellate record (which did not include the PSE),[2] Petitioner did not show prejudice resulting from counsel's failures regarding the PSE. (State's Lodging F-7.) The Court of Appeals cursorily addressed the Fifth Amendment argument (discussed in greater detail in

---

[2] The state district court ordered that PSE removed from the Presentence Investigation Report and sealed, and that was the likely reason the PSE was not included in the record. (State's Lodging E-1, p. 93.) Petitioner's counsel's attempts to augment the record at the petition for review stage were unsuccessful. (State's Lodgings F-6, F-8.)

**MEMORANDUM DECISION AND ORDER - 5**

a later section of this Order). (*Id*., p. 5.) The Idaho Supreme Court denied Petitioner's petition for review. (State's Lodging F-12.)

On January 28, 2011, Petitioner filed a Petition for Writ of Habeas Corpus in this Court, commencing these proceedings. (Dkt. 3.) He raised five broad claims, including several sub-claims. (Dkt. 3-1, pp. 1-2.) He later filed a narrowed Amended Petition. (Dkt. 21.)

Petitioner was permitted to proceed on his Amended Petition, which raised two claims centered on his involvement in the PSE: (1) a violation of his right to effective assistance of counsel under the Sixth Amendment and (2) a violation of his privilege against self-incrimination under the Fifth Amendment. In the course of habeas corpus proceedings, the Court determined that Petitioner's first claim was exhausted properly, but it reserved ruling on whether Petitioner's second claim was exhausted properly, reasoning that it may be simpler to address the claim on the merits after full briefing. (Dkt. 31.)

## REVIEW OF HABEAS CORPUS CLAIMS

### 1.    Standard of Law

Federal habeas corpus relief may be granted on claims adjudicated on the merits in a state court judgment when the federal court determines that the petitioner "is in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2254(a). Under § 2254(d), as amended by the Anti-terrorism and Effective Death Penalty Act (AEDPA), federal habeas corpus relief is further limited to instances where

**MEMORANDUM DECISION AND ORDER - 6**

the state-court adjudication of the merits:[3]

1.     resulted in a decision that was contrary to, or involved an
       unreasonable application of, clearly established Federal law, as
       determined by the Supreme Court of the United States; or

2.     resulted in a decision that was based on an unreasonable
       determination of the facts in light of the evidence presented in the
       state court proceeding.

When a party contests the state court's legal conclusions, including

application of the law to the facts, § 2254(d)(1) governs. That section consists of

two alternative tests: the "contrary to" test and the "unreasonable application" test.

Under the first test, for a decision to be "contrary to" clearly established

federal law, the petitioner must show that the state court applied "a rule of law

different from the governing law set forth in United States Supreme Court

precedent, or that the state court confronted a set of facts that are materially

indistinguishable from a decision of the Supreme Court and nevertheless arrived at

a result different from the Court's precedent." *Williams v. Taylor*, 529 U.S. 362,

404-06 (2000).

Under the second test, to satisfy the "unreasonable application" clause of

§ 2254(d)(1), the petitioner must show that the state court was "unreasonable in

applying the governing legal principle to the facts of the case." *Williams*, 529 U.S.

at 413.

---

[3]A state court need not "give reasons before its decision can be deemed to have been 'adjudicated on the merits.'" *Harrington v. Richter*, 131 S.Ct. 770, 785 (2011).

**MEMORANDUM DECISION AND ORDER - 7**

The United States Court of Appeals for the Ninth Circuit has explained: "A state court's decision is not contrary to or an unreasonable application of Supreme Court precedent unless that precedent 'squarely addresses the issue' or gives a 'clear answer to the question presented' in the case before the state court." *Gulbrandsen v. Ryan*, 711 F.3d 1026, 1044 (9th Cir. 2013). Stated another way, "when a state court may draw a principled distinction between the case before it and Supreme Court caselaw, the law is not clearly established for the state-court case." *Murdoch v. Castro*, 609 F.3d 983, 991 (9th Cir. 2010) (en banc).

Neither can a federal court grant relief simply because it concludes in its independent judgment that the decision is incorrect or wrong; the state court's application of federal law must be objectively unreasonable to warrant relief. *Lockyer v. Andrade*, 538 U.S. 63, 75 (2003); *Bell v. Cone*, 535 U.S. 685, 694 (2002).

In *Harrington v. Richter*, 131 S.Ct. 770 (2011), the United States Supreme Court reiterated that a federal court may not simply re-determine a claim on its merits after the highest state court has done so, just because the federal court would have made a different decision. Rather, the review is necessarily deferential. The Supreme Court explained that under § 2254(d), a habeas court (1) "must determine what arguments or theories supported or . . . could have supported, the state court's decision;" and (2) "then it must ask whether it is possible fairminded jurists could disagree that those arguments or theories are inconsistent with the

**MEMORANDUM DECISION AND ORDER - 8**

holding in a prior decision of this Court." *Id*. at 786. If fairminded jurists could disagree on the correctness of the state court's decision, then a federal court cannot grant relief under § 2254(d)(1). *Id*. The Supreme Court emphasized: "It bears repeating that even a strong case for relief does not mean the state court's contrary conclusion was unreasonable." *Id*. (internal citation omitted).

The United States Supreme Court has recently clarified "that review under § 2254(d)(1) is limited to the record that was before the state court that adjudicated the claim on the merits." *Cullen v. Pinholster*, 131 S.Ct. 1388, 1398 (2011). This limitation applies to cases that were adjudicated on the merits in state court and cases in which the factual determination of the state court is not unreasonable.

If the federal district court determines that the state court decision *is* contrary to, or an unreasonable application of, clearly-established United States Supreme Court precedent, under § 2254(d)(1), *and* the state court's factual determinations were reasonable, then the federal district court proceeds to a de novo review of the constitutional issue at hand to determine whether a writ of habeas corpus should issue. *See Panetti v. Quarterman*, 551 U.S. 930, 953 (2007); *Frantz v. Hazey*, 533 F.3d 724, 735 (9th Cir. 2008). In such instances, the Court still must apply § 2254(e)(1), which is that any factual determinations by the state court are presumed correct and can be rebutted only by clear and convincing evidence. *Pirtle v. Morgan*, 313 F.3d 1160, 1167 (9th Cir. 2002).

When a party contests the reasonableness of the state court's factual

**MEMORANDUM DECISION AND ORDER - 9**

determinations, the court must undertake a § 2254(d)(2) analysis. To be eligible for relief under § 2254(d)(2), the petitioner must show that the state court decision was based upon factual determinations that were "unreasonable in light of the evidence presented in the State court proceeding." *Id*. The United States Supreme Court has admonished that a "state-court factual determination is not unreasonable merely because the federal habeas court would have reached a different conclusion in the first instance." *Wood v. Allen*, 130 S.Ct. 841, 849 (2010) (citations omitted).

The United States Court of Appeals for the Ninth Circuit has identified four types of unreasonable factual determinations that result from procedural flaws that occurred in state court proceedings: (1) when state courts fail to make a finding of fact; (2) when courts mistakenly make factual findings under the wrong legal standard; (3) when "the fact-finding process itself is defective"; or (4) when courts "plainly misapprehend or misstate the record in making their findings, and the misapprehension goes to a material factual issue that is central to petitioner's claim." *Taylor v. Maddox*, 366 F.3d. 992, 1000-01 (9th Cir. 2004).

If the factual determination was unreasonable, then the Court is *not* limited by § 2254(d)(1) or (e)(1), but proceeds to a de novo review of the claims, which may include consideration of evidence outside the state court record. *Maxwell v. Roe*, 628 F.3d 486, 494-95 (9th Cir. 2010); *Jones v. Walker*, 540 F.3d 1277 (11th Cir. 2008) (*en banc*).

**MEMORANDUM DECISION AND ORDER - 10**

2.      **Petitioner's Sixth Amendment Claim**

Petitioner's first claim is that his right to effective assistance of counsel under the Sixth Amendment was violated when his trial counsel failed to advise him of his Fifth Amendment right to be free from self-incrimination regarding the PSE ordered by the state district court for sentencing purposes.

A.      *Standard of Law*

The clearly-established law governing a claim of ineffective assistance of counsel is found in *Strickland v. Washington*, 466 U.S. 668 (1984). There, the United States Supreme Court determined that, to succeed on an ineffective assistance claim, a petitioner must show that (1) counsel's performance was deficient in that it fell below an objective standard of reasonableness, and that (2) the petitioner was prejudiced by the deficient performance. *Id*. at 684.

In assessing whether trial counsel's representation fell below an objective standard of competence under *Strickland*'s first prong, a reviewing court must view counsel's conduct at the time that the challenged act or omission occurred, making an effort to eliminate the distorting lens of hindsight. *Id*. at 689. The court must indulge in the strong presumption that counsel's conduct fell within the wide range of reasonable professional assistance. *Id*.

Under *Strickland*'s second prong, prejudice means that there is a reasonable probability that, but for counsel's errors, the result of the proceeding would have been different. *Id*. at 684, 694. A reasonable probability is one sufficient to

**MEMORANDUM DECISION AND ORDER - 11**

undermine confidence in the outcome. *Id.* at 694.

A petitioner must establish both incompetence and prejudice to prove an ineffective assistance of counsel case. 466 U.S. at 697. On habeas review, the court may consider either prong of the *Strickland* test first, or it may address both prongs, even if one is deficient and will compel denial. *Id.*

The foregoing standard, giving deference to counsel's decision-making, is the de novo standard of review. Another layer of deference–to the state court decision–is afforded on federal habeas corpus review. In giving guidance to district courts reviewing *Strickland* claims on habeas corpus review, the United States Supreme Court explained:

> The pivotal question is whether the state court's application of the *Strickland* standard was unreasonable. This is different from asking whether defense counsel's performance fell below *Strickland*'s standard. Were that the inquiry, the analysis would be no different than if, for example, this Court were adjudicating a *Strickland* claim on direct review of a criminal conviction in a United States district court. Under AEDPA, though, it is a necessary premise that the two questions are different. For purposes of § 2254(d)(1), "an unreasonable application of federal law is different from an incorrect application of federal law." *Williams*, *supra*, at 410, 120 S.Ct. 1495. A state court must be granted a deference and latitude that are not in operation when the case involves review under the *Strickland* standard itself.

*Harrington v. Richter*, 131 S.Ct. at 785.

**B.**   *Discussion*

The first prong of the *Strickland* analysis was uncontested before the Idaho Court of Appeals. Both parties agreed that (1) Petitioner's attorney did not advise

**MEMORANDUM DECISION AND ORDER - 12**

him of his Fifth Amendment right not to participate in a PSE or not to incriminate himself during the PSE if he chose to participate, and (2) the failure constituted deficient performance. (State's Lodging F-7, p. 3.) The Idaho Court of Appeals determined that Petitioner did not meet the second prong of *Strickland*, because he failed to show that he was prejudiced by his counsel's failure to advise him of his Fifth Amendment right.

Noting that there are two levels of review on habeas corpus–the more lenient de novo *Strickland* standard and the stricter *Harrington* § 2254(d) standard, and having reviewed the entire record, this Court concludes that Petitioner has failed to show prejudice as it is defined by *Strickland* under either standard. The record reflects that there is no reasonable probability that, but for counsel's errors, the result of the proceeding would have been different, with a reasonable probability being defined as one sufficient to undermine confidence in the outcome. *See Strickland*, 466 U.S. at 684, 694. In coming to this conclusion, the Court has considered two aspects of the Fifth Amendment's protection: (1) Petitioner's right not to be compelled to make incriminating statements against himself during the PSE that could have subjected him to a future criminal prosecution; and (2) the right not to have his choice to remain silent during the PSE (if, indeed, he did invoke that right) used against him in criminal proceedings.

Petitioner has not argued that he actually made any incriminating statements during the PSE that could have subjected him to a future criminal prosecution.

**MEMORANDUM DECISION AND ORDER - 13**

Thus, there is not a reasonable probability that the outcome of the sentencing

hearing would have been different as to that aspect of the Fifth Amendment. Thus,

this claim does not meet the de novo *Strickland* standard of review for lack of

prejudice, nor would it meet the higher *Harrington* standard under § 2254(d).

On the other hand, the record reflects that the state district court considered

– at least to some degree – Petitioner's refusal to answer the written questions in

the PSE and the evaluator's resulting conclusion that Petitioner posed a moderate

risk of re-offending. The remaining Fifth Amendment issue is whether Petitioner

was prejudiced by his counsel's failure to advise him that he could have avoided

the PSE and its conclusion *altogether* by invoking his Fifth Amendment right not

to participate in the PSE.

The sentencing transcript reflects that the state district court took into

consideration the following aspects of the PSE at the sentencing hearing before

pronouncing the sentence:

> So when I look at all these facts and I look at the fact that Mr.
> Esquivel was really not cooperative in the evaluation and I realize
> that there's an argument to be made that a person does this if they are
> innocent of the charge, but I was concerned when I saw that he
> didn't complete the part of the test and I don't buy the whole idea
> that he was uncomfortable with answering questions about his own
> sexual interests. He was aware that this was an important evaluation
> that the Court was going to take into consideration in deciding what
> to do. I'm concerned again with the guarded nature in which he
> answered some of the questions by the evaluator. True it is that–it's
> not to be unexpected that an individual will get an evaluation of a
> moderate level of risk because of denial, but the fact of the matter
> that the Court cannot ignore the fact that he was evaluated has

**MEMORANDUM DECISION AND ORDER - 14**

having a moderate level of risk. Although today he's indicated that he's interested in having and attending the appropriate therapy, I want to note that it's easy to come into this court and make those kinds of assertions, but all along in his comments to the evaluator he made it clear that he was not interested in having any sort of treatment.

(State's Lodging A-3, p. 270.)

At the same time, the state district court noted:

On the jury verdict, I do find that you are guilty of this crime. And I need you to understand that the legislature has given me a great deal of discretion in sentencing and in doing this, I have considered the nature of the offense and your character. I have considered the items that were in the presentence investigation report as well as the comments made by various people who have written in to the Court. In particular I've also relied very heavily on what happened in the trial itself, my own recollection of it, my own assessment of the credibility of the witnesses in arriving at this decision.

* * *

[A]mong other things I have considered the denial that you continue to make to this Court and I think it cuts both ways. It is something in mitigation, but it's also something in aggravation.

* * *

I want to make it clear that I sat through this trial. I also observed the CARES tape at the request of both counsel because there was a request to have the CARES tape introduced at some point in the trial which I denied, and what I found is that – I would make a specific finding that I found the child victim in this case quite credible.

Obviously the jury agreed with me.

(*Id.*, pp. 265-66.)

**MEMORANDUM DECISION AND ORDER - 15**

In arguable contradiction to the above statements in its review of the role of the psychosexual evaluation in its own decision-making at sentencing, the same state district court on post-conviction review concluded as follows:

> This Court, at sentencing, only noted several times that Esquivel continued to maintain his innocence during the psychosexual evaluation causing the evaluator to conclude that he was not amenable to treatment placing him at moderate risk to reoffend. However, the Court already knew he was not amenable to rehabilitation, because he denied culpability at trial. The psychosexual evaluation itself added no new information to what this Court already knew based on Esquivel's testimony at trial. In fact, his lack of participation in the psychosexual evaluation given his trial testimony. In view of Esquivel's testimony, there is nothing in the psychosexual evaluation that could have affected the Court's sentence.
>
> While the Court of Appeals suggested in its decision that the mention of the psychosexual evaluation implied that the Court relied on the report, that is not the case. This Court determined Esquivel's sentence based on the testimony he gave and the evidence produced at trial and not on the psychosexual evaluation. The psychosexual evaluation did not increase or reduce his sentence. Esquivel did not receive a different sentence, either enhanced <u>or</u> reduced, based on his refusal to cooperate in the psychosexual evaluation or because of its contents. <u>It was his failure to accept responsibility</u> that demonstrated rehabilitation was unlikely.

(State's Lodging E-1, p. 92, emphasis in original.)

As noted above, on appeal of the denial of the amended post-conviction petition, Petitioner inadvertently failed to submit the PSE report for the Idaho Court of Appeals to review, but argued, based on the post-conviction order denying relief: "Although the district court now states that it did not rely on the psychosexual report, but rather only mentioned it in passing, that finding is contrary to the record. Because the finding was

**MEMORANDUM DECISION AND ORDER - 16**

clearly erroneous, it must now be reversed." (State's Lodging, Dkt. F-1, p. 10.)

Upon considering that argument, the Idaho Court of Appeals concluded:

> Failure to include the PSE in the appellate record precludes the complete analysis of the prejudice prong. The record herein does not include the [psychosexual evaluation]. Missing portions of an appellate record are presumed to support the decision of the trial court. Therefore, we conclude the district court did not err when it determined that Esquivel was not prejudiced by the trial counsel's failure to inform Esquivel of his Fifth Amendment right not to participate in the [psychosexual evaluation].

(State's Lodging F-7, pp. 4-5 (citations and footnote omitted).)

### (1)    Factual Findings of State Court under § 2254(d)(2)

Petitioner argues that the Idaho Court of Appeals's decision was an unreasonable finding of fact because that court ignored the fact that the sentencing hearing transcript *shows* that the state district court *said* it considered the psychosexual evaluation during the sentencing hearing, but on post-conviction the same court said the opposite – that it did *not* consider the evaluation.

The Idaho Court of Appeals uses a three-pronged test from *Hughes v. State*, 224 P.3d 515 (Ct. App. 2009), to determine whether the prejudice prong of *Strickland* is met in a case centering on a psychosexual evaluation.[4] (State's Lodging F-7, p. 4.) That test is "necessarily is based upon the record before and transcripts from the sentencing court." (*Id.*) In Petitioner's case, the Court of Appeals observed that "[f]ailure to include the PSE

---

[4] The *Hughes* analysis requires the court to determine (1) whether the content of the PSE is materially unfavorable, including the statements and admissions of the defendant, to assess the negativity of the report; (2) the extent of the sentencing's court reliance on the PSE; and (3) the totality of the evidence before the sentencing court. 224 P.3d at 531.

**MEMORANDUM DECISION AND ORDER - 17**

in the appellate record precludes the complete analysis of the prejudice prong." (*Id.*)

In other words, it was impossible for the Idaho Court of Appeals to undertake the complete *Hughes* analysis because Petitioner did not include the PSE in the record. This omission (attributable to Petitioner) does not make the Court of Appeals's fact finding unreasonable. Rather, the decision is reasonably based on those facts that *were presented* to the Court of Appeals. Thus, this Court concludes that none of the four types of fact-finding errors set forth in *Taylor v. Maddox* is present in this case.[5] The Court of Appeals's presumption that the missing portion of the record supported the district court's decision, together with the state district court's explanation that the PSE added no new information, was not an unreasonable finding of fact based on the evidentiary record before it.[6] Therefore, Petitioner has not met the standard for relief set forth in

---

[5] The *Taylor v. Maddox* four categories of unreasonable fact finding are: (1) when state courts fail to make a finding of fact; (2) when courts mistakenly make factual findings under the wrong legal standard; (3) when "the fact-finding process itself is defective"; or (4) when courts "plainly misapprehend or misstate the record in making their findings, and the misapprehension goes to a material factual issue that is central to petitioner's claim." 366 F.3d. at 1000-01.

[6] Petitioner also argues that the Idaho Court of Appeals's contradictory determination of its own statements in his two appeals further shows an unreasonable determination of facts. In the first round of appeals that led to appointment of counsel and the district court's consideration of the merits of the Sixth Amendment claim, the Idaho Court of Appeals stated: "The record before this Court on appeal demonstrates that the results of Esquivel's psychosexual evaluation *were considered* by the district court in making its sentencing decision and was a factor contributing to the length of his sentence." (Dkt. 35-1, p. 5.) However, this observation of the Court of Appeals was made before the district court had an opportunity to explain its reasoning at sentencing, and the merits of the claim were not at issue in the first appeal–only whether counsel should have been appointed to pursue the merits.

The Court of Appeals tried to perform the *Hughes* test on the second round of appeals to determine *to what degree* the PSE had affected the sentencing decision, but Petitioner did not submit the PSE. Therefore, the Court was unable to properly weigh all of the factors, and could do nothing but assume that the PSE supported the district court's position. Because how and whether the PSE affected the outcome of sentencing was not at issue in the failure-to-appoint-counsel appeal, Petitioner's argument

**MEMORANDUM DECISION AND ORDER - 18**

§ 2254(d)(2).[7]

        (2)      <u>Conclusions of State Court under § 2254(d)(1)</u>

Because the factual findings are not unreasonable, the Court next considers

whether the Court of Appeals's rejection of Petitioner's prejudice argument resulted in a

decision that was contrary to, or involved an unreasonable application of, *Strickland*. This

Court concludes that a review of the entire record that was before the Idaho Court of

Appeals does not support Petitioner's position that, had he not participated in the PSE,

there was a reasonable probability that the outcome of the sentencing would have been

different. Because Petitioner chose not to complete the portion of the evaluation that

might have shown his viewpoint on sexual acts with children, the state district court

concluded that the report contained *nothing more* than what the court obtained from the

other parts of the record. It already was clear from Petitioner's trial testimony and

sentencing hearing testimony that he denied responsibility for the crimes; therefore, with

that factor (weighed against the victim's credible CARES interview and trial testimony),

the court concluded that Petitioner was at a moderate risk to re-offend and was not

particularly amenable to rehabilitation. This Court agrees with the state district court that,

---

does not rest on a sound basis.

     [7] Even if the PSE report (Dkt. A-6) could now be considered, Petitioner has not shown that it contains anything that is new or different from the facts derived from the trial and sentencing testimony. Not only did Petitioner not discuss any other incidents of sexual abuse or potential crimes, Petitioner continued to deny that the crime had occurred, just as he had done at trial. The PSE report is a part of this Court's record (Dkt. A-6), but because Petitioner has not overcome the hurdle to permit him to bring new evidence into Court, it cannot be considered here, given that the Idaho Court of Appeals did not consider it.

**MEMORANDUM DECISION AND ORDER - 19**

regardless of anything arising from, or having to do with, the PSE process or conclusions, the PSE added *nothing new* to the mix of facts already before the Court, and, therefore, the outcome would have been the same with or without the PSE report. Accordingly, no prejudice has been shown.

Thus, based on an evaluation of the evidence that is in the state court record, the claim fails at the de novo level of review of *Strickland*'s prejudice prong.[8]

In addition, the claim fails under the stricter federal habeas corpus legal standard of § 2254(d)(2), as explained by *Harrington*. While some jurists may agree with Petitioner's counsel's characterization of the post-conviction orders–that the sentencing court did, in fact, consider the PSE report, and that, the failure to cooperate with that report did make a difference in sentencing; other jurists would agree with (1) the post-conviction court's explanation that the report was considered but not relied upon to fashion the sentence because the facts of denial and silence were already made known to the court at trial, and (2) the conclusion that the outcome of the sentencing hearing would not have been different without the PSE. This Court, in particular, agrees that the victim's unsophisticated, yet clear descriptions of the several sexual incidents forming the basis of the criminal charges were remarkably credible for a child of that age. (See State's Lodging A-3, pp. 267-68.) Because reasonable jurists could disagree whether the Idaho Court of Appeals arrived at the correct decision on the prejudice prong of *Strickland*,

---

[8] Per footnote 7, the claim would fail even if the PSE contents were considered.

**MEMORANDUM DECISION AND ORDER - 20**

habeas corpus relief cannot be granted on Petitioner's Sixth Amendment ineffective assistance of counsel claim under § 2254(d)(1).

### 3.    Petitioner's Fifth Amendment Claim

#### A.    *Procedural Default*

##### (1)    <u>Standard of Law on Exhaustion</u>

Habeas corpus law requires that a petitioner "exhaust" his state court remedies before pursuing a claim in a federal habeas petition. 28 U.S.C. § 2254(b). To exhaust a claim, a habeas petitioner must fairly present it to the highest state court for review in the manner prescribed by state law. *See O'Sullivan v. Boerckel*, 526 U.S. 838, 845 (1999). Unless a petitioner has exhausted his state court remedies relative to a particular claim, a federal district court may deny the claim on its merits, but it cannot otherwise grant relief on unexhausted claims. 28 U.S.C. § 2254(b). The petitioner can satisfy the exhaustion requirement by showing that (1) he has "fairly presented" his federal claim to the highest state court with jurisdiction to consider it, or (2) that he did not present the claim to the highest state court, but no state court remedy is available when he arrives in federal court (improper exhaustion). *Johnson v. Zenon*, 88 F.3d 828, 829 (9th Cir. 1996) (citations omitted).

To exhaust a habeas claim properly, a habeas petitioner must "invok[e] one complete round of the State's established appellate review process," *O'Sullivan v. Boerckel*, 526 U.S. at 845, giving the state courts a full and fair opportunity to correct the

alleged constitutional error at each level of appellate review. *See Baldwin v. Reese*, 541

U.S. 27, 29 (2004). Improperly exhausted claims are deemed "procedurally defaulted."

Procedurally defaulted claims include those within the following circumstances: (1) when

a petitioner has *completely failed* to raise a particular claim before the Idaho courts; (2)

when a petitioner has raised a claim, but has failed to fully and fairly present it as a

*federal* claim to the Idaho courts, as discussed directly above; or (3) when the Idaho

courts have rejected a claim on an independent and adequate state procedural ground. *See*

*Martinez v. Klauser*, 266 F.3d 1091, 1093-94 (9th Cir. 2001) (quoting *Wells v. Maass*, 28

F.3d 1005, 1010 (9th Cir. 1994)). Under these circumstances, the claim is considered to

have been "procedurally defaulted." *See Coleman v. Thompson*, 501 U.S. 722, 731

(1991).

(2)    <u>Discussion of Exhaustion</u>

Petitioner's second claim is that the court-ordered PSE violated his Fifth

Amendment right against self-incrimination. The preliminary question regarding

Petitioner's second claim is whether it is procedurally defaulted. As noted above, the

Idaho Court of Appeals determined that Petitioner had not preserved the claim on appeal,

because he had not presented or argued it to the state district court in the post-conviction

action, but, then it was unclear whether the claim was then addressed on the merits on

appeal.[9] On further review of the state court record, the Court is persuaded by

---

[9] The Court rejects Petitioner's argument that, because the Fifth Amendment issue was the basis for the Sixth Amendment ineffective assistance claim, a stand-alone Fifth Amendment claim was actually

**MEMORANDUM DECISION AND ORDER - 22**

Respondent's argument that, when the Court of Appeals stated, "Esquivel's claim has recently been rejected by this Court," it was referring to the merits of the argument regarding *whether the claim had been preserved below*, not the merits of the Fifth Amendment argument. In particular, the Court of Appeals was discussing *Barcella v. State*, 224 P.3d 536 (Idaho Ct. App. 2009), which held that *DeRushé v. State*, 200 P.3d 1148 (Idaho 2009), "does not stand for the broad proposition that any time a claim of ineffective assistance of counsel is pled, the district court must also address any potential underlying constitutional violation independently." (State's Lodging F-7, p. 5.)

A review of *Barcella* shows that only a procedural ruling was at issue, not the merits of any claim; therefore, when the Idaho Court of Appeals made the statement that "Esquivel's *claim* has recently been rejected by this Court,"[10] it was referring only to disposition of the same procedural argument at issue in Mr. Esquivel's and Mr. Barcella's cases. In *Barcella*, Mr. Barcella alleged that his defense attorney prohibited him from testifying at his own trial. 224 P.3d at 452. On appeal, Mr. Barcella filed a supplemental brief that argued his claim should be analyzed as a direct constitutional violation of his right to testify rather than as an ineffective assistance of counsel claim, citing *DeRushé* as authority. The Idaho Court of Appeals rejected that argument:

---

presented in his second amended post-conviction petition. (State's Lodging E-1, p. 26: "Specifically, Petitioner asserts that his trial counsel's failure to properly advise him regarding his Fifth Amendment Rights in submitting to a psychosexual evaluation amounted to deficient performance.")

[10] Emphasis added.

**MEMORANDUM DECISION AND ORDER - 23**

This language clarifies the Supreme Court's concern that the district court had not analyzed the claim that was alleged in that case. In addition, the Supreme Court was disturbed by the district court's erroneous conclusion that counsel had the right to determine whether DeRushé testified. This concern prompted the Supreme Court to give the district court specific guidance on remand. Thus, we conclude that the holding is limited to the specific facts of that case and how the Supreme Court perceived the pleadings and arguments that were presented to the district court.

224 P.3d at 476.

Even though *DeRushé* and *Barcella* were both cases in which the defendants alleged that their trial counsel deprived them of the right to testify at trial, the Idaho Court of Appeals distinguished *Barcella* from *DeRushé*:

In this case, Barcella pled and argued a claim of ineffective assistance of counsel, and the district court ruled on that claim. No argument was ever presented to the district court regarding a direct constitutional violation of Barcella's right to testify. The district court was not required to frame the issues for the parties, nor was it required to develop the arguments to be presented. Barcella's argument that the district court was required, under *DeRushé*, to analyze the claim as a direct constitutional violation is incorrect. *DeRushé's* holding was an instruction to the district court in that case, and it does not mandate that a claim of ineffective assistance of trial counsel for failure to allow the defendant to testify be analyzed as a direct constitutional violation.

*Id*. at 476-77. The foregoing discussion and conclusion make it clear that the Idaho Court of Appeals did not decide the merits of Petitioner's claim in its April 8, 2010 opinion, nor did it decide the merits of essentially the same claim in *Barcella* or *DeRushé*, such that the holding of either case could have been applied to reject the merits of Petitioner's claims, because Petitioner's case is not about his counsel preventing him from testifying.

**MEMORANDUM DECISION AND ORDER - 24**

Finally, even if the Idaho Court of Appeals's opinion can be construed to have determined the Fifth Amendment claim on its merits, Petitioner did not raise this claim in his petition for review before the Idaho Supreme Court. (State's Lodgings F-10, F-11.) Because the records shows that Petitioner did not bring this claim before the Idaho appellate courts in a proper manner, the claim is procedurally defaulted.

If a petitioner's claim is procedurally defaulted, the federal district court cannot hear the merits of the claim unless a petitioner meets one of two exceptions: a showing of adequate legal cause for the default and prejudice arising from the default; or a showing of actual innocence, which means that a miscarriage of justice will occur if the claim is not heard in federal court. *See Murray v. Carrier*, 477 U.S. 478, 488 (1986); *Schlup v. Delo*, 513 U.S. 298, 329 (1995).

No "cause" for the default of Petitioner's claim is evident from the record. *Martinez v. Ryan,* 132 S.Ct. 1309 (2012), does not apply as cause to excuse the default of the claim because this is not an ineffective assistance of trial counsel claim, but a stand-alone Fifth Amendment claim.[11] Even if Petitioner can show cause for the default of his Fifth Amendment claim in some other manner, he cannot show prejudice (for the reasons set forth below in the merits analysis). In addition, the miscarriage of justice exception

---

[11] In *Martinez v. Ryan*, the United States Supreme held that inadequate assistance of counsel "at initial-review collateral review proceedings may establish cause for a prisoner's procedural default of a claim of ineffective assistance at trial." 132 S.Ct. at 1315.

**MEMORANDUM DECISION AND ORDER - 25**

does not apply.[12] The Court will forgo permitting Petitioner to submit additional argument or evidence on cause and prejudice or actual innocence and instead consider the merits of the Fifth Amendment claim in the alternative.

### B.   *Merits*

Alternatively, assuming that the state appellate courts rejected the Fifth Amendment claim on the merits or that Petitioner can show cause and prejudice for the default of the claim, the Court now considers whether that claim is meritorious.

The Fifth Amendment offers its protection for custodial interviews where a *Miranda* warning is required in two different ways: (1) where a *Miranda* warning is not given, and the detainee/defendant made an incriminating statement, and the State then uses the statement against him to his disadvantage; or  (2) where the detainee/defendant invokes his right to remain silent (with or without a warning), and the State uses his silence against him to his detriment.[13]

---

[12] The Court agrees with Respondent's analysis of the "actual innocence" claim. Petitioner has failed to show actual innocence that could serve as a gateway to excuse the procedural default of his Fifth Amendment claim. Petitioner does not raise newly discovered evidence *not available* at the time of trial, but simply takes issue with the manner in which the jury interpreted the child's description of the sexual contact in light of the statutory language requiring genital-to-genital contact. (See Sur-Reply, Dkt. 36, pp. 6-9.)

[13] In this case, the Court assumes, without deciding, that a *Miranda*-type warning was necessary before Dr. Engle began the PSE and that Petitioner invoked his right to remain silent by not answering the 300 questions. The Idaho Supreme Court has not gone that far, but it is not a court of precedent for this Court as to constitutional issues. In *Gonzales v. State*, 254 P.3d 69 (Idaho Ct. App. 2011), the Idaho Court of Appeals explained the extent of the constitutional conclusions made in *Estrada*:

> The right to counsel prior to a psychosexual evaluation extends only to advice regarding the defendant's decision whether to submit to the evaluation. *Estrada*, 143 Idaho at 562–63, 149 P.3d at 837–38. Such advice requires counsel to inform the

**MEMORANDUM DECISION AND ORDER - 26**

Here, Petitioner *made statements* to the evaluator that the sentencing court

interpreted as indications that he was not interested in rehabilitative treatment, and

Petitioner *refused to answer* certain questions that frustrated the purpose of the PSE,

which the sentencing court interpreted as a refusal to cooperate and take responsibility for

his criminal acts. Both variations of the Fifth Amendment protection, then, are arguably at

issue. However, neither avenue leads to relief, either under the de novo or AEDPA

standard of review.

(1)    De Novo Standard

If the state appellate court does not decide a claim on the merits, then § 2254(d)(1)

does not apply, and the federal district court reviews the claim de novo. *Pirtle v. Morgan*,

313 F.3d 1160, 1167 (9th Cir. 2002). In such case, as in the pre-AEDPA era, the federal

district court can draw from both United States Supreme Court and well as circuit

precedent, limited only by the non-retroactivity rule of *Teague v. Lane*, 489 U.S. 288

(1989) (the *Teague* nonretroactivity principle prevents a federal court from granting

habeas corpus relief to a state prisoner based on a rule announced after his conviction and

---

defendant of his or her Fifth Amendment right to remain silent as to the psychosexual
evaluation and that anything the defendant says to the evaluator will be disclosed to the
court for its consideration in formulating the defendant's sentence. *Id*. at 564, 149 P.3d at
839 [a concurring opinion disagreed that the defendant must be informed of how the
information could be used]. However, an advisory of the full panoply of rights required
by *Miranda v. Arizona*, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966) is not
necessary. *Estrada*, 143 Idaho at 564 n. 2, 149 P.3d at 839 n. 2. Finally, the Sixth
Amendment does not require counsel's presence during such an evaluation. *Hughes*, 148
Idaho at 456–57, 224 P.3d at 523–24.

*Id*. at 74.

**MEMORANDUM DECISION AND ORDER - 27**

sentence became final, subject to two narrow exceptions). *Cf.* 28 U.S.C. § 2254(d)(1) (limiting review to "clearly established Federal law, as determined by the Supreme Court"). However, even under de novo review where the petitioner has not shown an unreasonable determination of the facts by the state court, as here, the Court must apply § 2254(e)(1), which is that factual determinations by the state court are presumed correct and can be rebutted only by clear and convincing evidence. *Pirtle*, 313 F.3d at 1167.

The Fifth Amendment to the United States Constitution, providing that "no person shall be compelled in any criminal proceeding to be a witness against himself," is applicable to the states through the Fourteenth Amendment. *Malloy v. Hogan*, 378 U.S. 1 (1964). The Fifth Amendment protects against self-incrimination of uncharged criminal conduct at both the guilt and the penalty phase of criminal proceedings. *Estelle v. Smith*, 451 U.S. 454, 462-63 (1981).

In *Estelle v. Smith*, the trial court ordered that a psychiatrist conduct a pretrial neutral competency examination of a criminal defendant. However, when the psychiatrist went beyond simply reporting to the court on the issue of competence and testified for the prosecution at the penalty phase on the crucial issue of respondent's future dangerousness, his role changed and became essentially like that of an agent of the State recounting unwarned statements made in a postarrest custodial setting. The *Estelle* Court held: "A criminal defendant, who neither initiates a psychiatric evaluation nor attempts to introduce any psychiatric evidence, may not be compelled to respond to a psychiatrist if his

statements can be used against him at a capital sentencing proceeding." 451 U.S. at 468.

While a volunteered statement is not barred by the Fifth Amendment, where an in-custody

pretrial detainee is ordered to undergo a psychiatric examination, he must be given a

*Miranda* warning, and, if he waives his right to remain silent, only then can his statements

be used against him during a capital sentencing proceeding. *Id*. at 468.

However, the Supreme Court has "never extended *Estelle*'s Fifth Amendment

holding beyond its particular facts." *Penry v. Johnson*, 532 U.S. 782, 795 (2001). The

obvious differences in Petitioner's case are that Petitioner was a convicted felon awaiting

sentence, not a pretrial detainee; Petitioner was advised of the purpose of the PSE (to

provide information to the Court to help determine his sentence); and Petitioner was not

facing a death sentence.

The United States Supreme Court has also determined that a sentencing court may

not draw an adverse inference from a defendant's silence in determining facts relating to

the circumstances and details of the crime. *Mitchell v. U.S.*, 526 U.S. 314, 330 (1999).

Here, however, the issue is not whether negative inferences were drawn from the facts

*relating to the circumstances and details of the crime*. Rather, a negative inference was

drawn from Petitioner's refusal to admit to the acts underlying the conviction and refusal

to cooperate with the PSE evaluator. In *Mitchell*, the United States Supreme Court

expressly stated: "Whether silence bears upon the determination of a lack of remorse ... is

a separate question. It is not before us, and we express no view on it." *Id*. at 330.

**MEMORANDUM DECISION AND ORDER - 29**

Lower courts are divided on whether the Fifth Amendment permits a sentencing court to use a convicted felon's silence or refusal to cooperate to help determine his sentence. A well-reasoned district court decision from the United States District Court for the District of New Mexico addressed the Fifth Amendment question in the context of federal criminal sentencing:

> The Court agrees . . . that *Mitchell v. United States* does not limit the Court's ability to consider Goree's refusal to answer questions for the PSR. It would be difficult for the Court to do its work if a defendant refused to cooperate in putting together a PSR and the USPO could not tell the Court why certain sections are absent. Also, if a defendant refuses to accept responsibility, the Court needs [] that fact []. 18 U.S.C. § 3661 provides that "No limitation shall be placed on the information concerning the background, character, and conduct of a person convicted of an offense which a court of the United States may receive and consider for the purpose of imposing an appropriate sentence." 18 U.S.C. § 3661.

*U.S. v. Chapman*, 2012 WL 2574814, at *13 (D.N.M. 2012).

Similarly, in *U.S. v. Kennedy*, 499 F.3d 547, 551-52 (6th Cir. 2007), where Mr. Kennedy, a convicted felon, did not cooperate in finishing his psychosexual evaluation, and the sentencing court considered that fact in fashioning a sentence, the United States Court of Appeals for the Sixth Circuit reasoned:

> Kennedy's case implicates Justice Scalia's "clutter swept under the rug [dissent in *Mitchell*]," as the district court plainly considered Kennedy's refusal to complete testing in determining his propensity for future dangerousness, rather than in determining facts of the offense. Given the narrowness of its holding, *Mitchell* simply does not limit the district court's ability to consider a wide variety of "information concerning the background, character, and conduct" of the defendant in determining an appropriate sentence, 18 U.S.C. § 3661; to "order a study of the defendant," *id.* § 3552(b); and, therefore, to consider the defendant's refusal to cooperate

**MEMORANDUM DECISION AND ORDER - 30**

in assessing what sentence is necessary "to protect the public from further crimes of the defendant," *id*. § 3553(a)(2)(C). In fact, as Justice Scalia aptly observed, "Few facts available to a sentencing judge ... are more relevant to 'the likelihood that [a defendant] will transgress no more, the hope that he may respond to rehabilitative efforts to assist with a lawful future career, [and] the degree to which he does or does not deem himself at war with his society' than a defendant's willingness to cooperate." *Mitchell*, 526 U.S. at 339, 119 S.Ct. 1307 (Scalia, J., dissenting) (quoting *Roberts v. United States*, 445 U.S. 552, 558, 100 S.Ct. 1358, 63 L.Ed.2d 622 (1980)).

*Id*. at 553.

Moreover, the circuit courts are divided over whether the Fifth Amendment prohibits using silence to show lack of remorse inviting a harsher sentence. *Compare United States v. Mikos*, 539 F.3d 706, 718-19 (7th Cir. 2008) (holding that during a capital sentencing a defendant's silence may be considered regarding lack of remorse), *with Lesko v. Lehman*, 925 F.2d 1527, 1544-45 (3d Cir. 1991) (holding that during a capital sentencing a defendant's failure to apologize may not be considered regarding lack of remorse); *see Lee v. Crouse*, 451 F.3d 598, 605-06 (10th Cir. 2006) ("we conclude it remains unanswered by the Supreme Court whether a sentencing court in a non-capital case may, for purposes other than determining the facts of the offense of conviction, draw an adverse inference from a criminal defendant's refusal to testify or cooperate").

As to the statements Petitioner made that were incriminating relative to his sentence (that he did not care to participate in rehabilitative therapy), there is no binding precedent from the United States Supreme Court or the Ninth Circuit Court of Appeals requiring the sentencing court to refrain from using a convicted felon's statements that are not related to

the facts and circumstances of the crime.

Similarly, as to Petitioner's silence (that he refused to answer the 300 questions about deviant sexual behavior in the PSE), there is no binding precedent prohibiting the sentencing court from using that fact to determine the degree to which Petitioner would cooperate with rehabilitation and refrain from sexual activity with minors in the future. Therefore, Petitioner is not entitled to habeas corpus relief under a de novo standard of review.

(2)   AEDPA Review

As set forth above, because the United States Supreme Court has not yet addressed the Fifth Amendment question at issue here that has divided lower federal courts, Petitioner cannot show that the Idaho Court of Appeals' opinion rejecting his Fifth Amendment claim is contrary to, or an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States. Accordingly, the claim is subject to denial on the merits.

(3)   Harmless Error

Finally, the Court determines, whether, even if Petitioner could show that his Fifth Amendment rights were violated by the state district court's use of his statements and silence at sentencing, the error was harmless. In *Penry v. Johnson*, 532 U.S. 782 (2001), Mr. Penry relied on *Estelle v. Smith*, discussed above, to argue that his Fifth Amendment right was violated during the capital sentencing phase of trial when the prosecution elicited

**MEMORANDUM DECISION AND ORDER - 32**

future dangerousness testimony from a clinical neuropsychologist, Dr. Price, and that

testimony had been derived from a psychiatric evaluation prepared by Mr. Penry's

psychiatrist, Dr. Peebles, who had been retained to determine Mr. Penry's competency to

stand trial on an earlier charge unrelated to the murder at issue. The United States Supreme

Court distinguished *Estelle* and rejected Mr. Penry's claim on the merits.

The claim was also rejected on harmless error grounds:

> Even if our precedent were to establish squarely that the prosecution's
> use of the Peebles report violated Penry's Fifth Amendment privilege against
> self-incrimination, that error would justify overturning Penry's sentence only
> if Penry could establish that the error "'had substantial and injurious effect
> or influence in determining the jury's verdict.'" *Brecht v. Abrahamson*, 507
> U.S. 619, 637, 113 S.Ct. 1710, 123 L.Ed.2d 353 (1993) (quoting *Kotteakos
> v. United States*, 328 U.S. 750, 776, 66 S.Ct. 1239, 90 L.Ed. 1557
> (1946)).We think it unlikely that Penry could make such a showing.

*Id*. at 795.

In Petitioner's case, the result is the same as it was for Mr. Penry. Even though a

jury had found him guilty of the crime, Petitioner refused to acknowledge his part in the

incident. While he certainly is entitled to remain silent, and there certainly are cases in

which the jury is wrong about guilt, when one has been found guilty of a crime, it is the

sentencing judge's duty to protect the victim and society. This cannot be done without a

far-reaching investigation and analysis of any and all information available.

To repeat Justice Scalia's pertinent observation in his dissent in *Mitchell*:

> Few facts available to a sentencing judge ... are more relevant to 'the
> likelihood that [a defendant] will transgress no more, the hope that he may
> respond to rehabilitative efforts to assist with a lawful future career, [and]

**MEMORANDUM DECISION AND ORDER - 33**

the degree to which he does or does not deem himself at war with his
society' than a defendant's willingness to cooperate."

*Mitchell*, 526 U.S. at 339, 119 S.Ct. 1307 (Scalia, J., dissenting) (quoting *Roberts v.*

*United States*, 445 U.S. 552, 558 (1980)).

The information and observations gleaned from the PSE and the PSE evaluator's

opinion were no different than the court's own observations of the victim and from

Petitioner's testimony at trial and no different from the court's own opinions. It is clear

that the court would have reached the same result without the PSE. Accordingly, Petitioner

has not shown that the error, if one occurred, had a substantial and injurious effect or

influence on the sentencing court.

**4.     Conclusion**

Petitioner's Sixth Amendment and Fifth Amendment claims are denied on the

merits. Thus, this entire action will be dismissed with prejudice.

**REVIEW OF THE CLAIMS AND THE COURT'S DECISION
FOR PURPOSES OF CERTIFICATE OF APPEALABILITY**

In the event Petitioner files a notice of appeal from the Order and Judgment in this

case, the Court now evaluates the claims within the Petition for suitability for issuance of a

certificate of appealability (COA), which is required before a habeas corpus appeal can

proceed. 28 U.S.C. § 2253(c)(1)(A); *Miller-El v. Cockrell*, 537 U.S. 322, 336 (2003); Rule

11(a), Rules Governing Section 2254 Cases.

A COA will issue only when a petitioner has made "a substantial showing of the

**MEMORANDUM DECISION AND ORDER - 34**

denial of a constitutional right." 28 U.S.C. § 2253(c)(2). The Supreme Court has explained that, under this standard, a petitioner must show "that reasonable jurists could debate whether (or, for that matter, agree that) the petition should have been resolved in a different manner or that the issues presented were adequate to deserve encouragement to proceed further." *Slack v. McDaniel*, 529 U.S. 473, 484 (2000) (internal citation and punctuation omitted).

When a court has dismissed the petition or claim on the merits, the petitioner must show that "reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong." *Id.* at 484. The COA standard "requires an overview of the claims in the habeas petition and a general assessment of their merits," but a court need not determine that the petitioner would prevail on appeal. *Miller-El*, 537 U.S. at 336.

Here, Petitioner's claims were dismissed on the merits. The Court finds that additional briefing on the COA is not necessary. Having reviewed the record again, the Court concludes that reasonable jurists would not find debatable the Court's decision on the merits of the claims raised in the Petition and that the issues presented are not adequate to deserve encouragement to proceed further. As a result, the Court declines to grant a COA on any issue or claim in this action.

If he wishes to proceed to the United States Court of Appeals for the Ninth Circuit, Petitioner must file a notice of appeal in this Court **within thirty (30) days after entry of**

**MEMORANDUM DECISION AND ORDER - 35**

**this Order**, and he may file a motion for COA in the Ninth Circuit Court of Appeals,

pursuant to Federal Rule of Appellate Procedure 22(b)(2).

## ORDER

### IT IS ORDERED:

1.      Petitioner's Motion for Extension of Time in Which to File Reply (Dkt. 33)

is GRANTED. The Reply (Dkt. 35) has been considered.

2.      Petitioner's Amended Petition for Writ of Habeas Corpus (Dkt. 21) is

DENIED, and this entire action is DISMISSED with prejudice.

3.      The Court will not grant a COA in this case. If Petitioner wishes to proceed

to the United States Court of Appeals for the Ninth Circuit, Petitioner must

file a notice of appeal in this Court **within thirty (30) days after entry of**

**this Order**, and he may file a motion for COA in the Ninth Circuit Court of

Appeals, pursuant to Federal Rule of Appellate Procedure 22(b)(2).

DATED:  **August 16, 2013**

_____

Honorable B. Lynn Winmill
Chief U. S. District Judge

**MEMORANDUM DECISION AND ORDER - 36**